Okay, the last case before the court today is Wilson v. Navy, case number 153225, actually an appeal from Merit System Protection Board. Mr. LaFond, do you If it pleases the court, I'm Matthew LaFondi for the petitioner, Nicholas Wilson. I'd like to begin by discussing briefly what this one of the more recent, most comprehensive discussions by this court in Egan, the Kaplan v. Connors case. I was kind of hoping that Judge Wallach would be here since he was the author of that opinion. However, all the judges here have joined in the things that the court in Kaplan recognized is that contrary to congressional intent, congressional authorization, the judiciary and the Administrative Agency of Merit Systems Protection Board may not intrude upon national security matters that are necessarily within the executive prerogative. And it is our position that, unlike in Egan and in Kaplan, this is that the Congress has spoken very clearly as to the responsibility of first the Merit Systems Protection Board and of this course to examine any complaint in which a employee claims that they have not been returned back to the precise point they would have occupied prior to their military service. And in this regard, we have seen rather extensive parsing of several courts regarding the contours of Egan as it might interact with this. In this instance, what we have seen is questions regarding Title VII claims, which are a different flavor of discrimination claims, and whether those particular claims can be considered in the context of deprivation of a security clearance. And what we have found is a distinction between the granting of this clearance where there has been either false statements predicated upon that or, in fact, a discriminatory intent ascribed to that. Now, the courts have been run away from perhaps the idea that delving into the merits of that is possible because of what is recognized as those ordinary burden-shifting analysis that come up in these sorts of discrimination claims under McDonald-Douglas. The problem is, you know, I understand the USERRA overlay here and why you think that is important, but first of all, I'm not even sure why you believe we're in a USERRA context. I mean, he was already re-employed after military service, after his military service ended, correct? He was almost immediately thereafter subject to a revocation of his security clearance, which was expressly stated because of his military service. Well, no, that's not how I understand the facts. I mean, it was a year after his military service was completed when all of these things happened, right? They started within a couple of weeks. Within a couple of weeks after the events of September 16, 2013, two people in his office began making reference to the Schenectady headquarters of Naval Reactors to say that Commander Wilson, while acting in an official capacity and performance of his military service, did something we did not like, and we say that that is... But the government disputes whether he was acting in an official capacity when he did that, right? Well, he's got the documentation, which is in the joint appendix, that says he is performing his military duties on September 16 and through October of specified dates in which he is the United States Navy and armed command investigator for the Navy Yard Police where this horrific shooting took place on September 16. So there is this very large body of documentation, which is his muster sheets, there's correspondence from the agency that he worked for as this naval commander. And more importantly, we have the employees in his civilian job saying, we want his security clearance revoked because of what he did while performing those duties. And that itself is what makes this so different than the cases... military duty. They didn't say, we want his security clearance revoked because he was on military duty. They said, we want his security clearance revoked because of things that he did, which are inconsistent with a security clearance. Performed in the course of his military duties. He went... None of this... There is nothing that exists with regards to a complaint about him that does not deal with the time that he's performing his military service. And the strict liability under USERRA is that the service was a substantial or motivating factor in the employee's adverse action. And the Merit Systems Protection Board is charged with adjudicating any complaint that the federal employer has failed or refused to accord an employee rights under USERRA. And here we have the crux of the failing of the Merit Systems Protection Board is, I very much appreciate the question that you're asking me, Judge O'Malley, but that never gets reached by the MSPB because they refuse to hear it. And this is very much also highlighted in the fact that when I bring this issue to the committee, I want to start talking about EGAN and I want to start talking about what the MSPB can talk about because the MSPB, in a written order, says we will not hear anything that Commander Wilson has to say about the merits of this case. But that's all we hear in the opposition brief from the government, is Commander Wilson did bad things while he was in the performance of his duties. And that is a disconnect, which I think is intolerable here because he is performing his military duties and if it's a substantial, I'm sorry. I just want to ask about EGAN and HESS. So in those cases, as I understand it, they say that there has to be congressional intent somehow in the statute or otherwise that the board is supposed to review for security clearance. What are you relying on in USERA for that congressional intent? Well, let's look at what the facts are in EGAN to distinguish that. And that is that in EGAN, the employee goes to apply for a job for which a security clearance is required and that the agency comes up with the conclusion that they aren't appropriate for some reason for having that security clearance. And thus, that gets appealed to a higher power saying that they abuse their discretion or there was some fault in the determination of that security clearance here. In the Uniform Services Employment and Reemployment Rights Act of 1994, Congress says there is an employer's adverse employment action. That sort of situation, that mandate, is not present in EGAN or in EGAN's progeny. This is sort of a unique situation here. And that is to say, Congress has said that you must examine any complaint that deals with this person's military service. It never says... Are you saying that his military service required him to carry a weapon? Yes, it did. Required him to carry a weapon on the base? Yeah, he was an armed... His identification is in the joint appendix. He's a member of the police department acting as an investigator. So he has... His own personal weapon? Huh? His own personal weapon. He carried his own personal weapon. No, no, no, no. He gets issued a weapon when he's performing his duties. However, because he has Title 10 apprehension authority under the Uniform Code of Military Justice, he is afforded statutory immunities to District of Columbia and federal law with regards to carrying firearms when he's not performing those duties. And one of the things that I spoke to in the course of briefing this case is Congress's intent that persons who have these immunities are around because they create this homeland security force to respond to these catastrophic events such as what occurred at the Washington Navy Yard. So when Congress in 2004 enacted the Law Enforcement Officers Safety Act, 18 U.S.C. 925B and C, it says we want police officers or other persons who we designate have this sort of discretionary law enforcement authority to necessarily include Title 10 U.C.M.S.J. apprehension authority that they are exempt from these weapons laws, that they may carry their personal firearms in off-duty anywhere they want except for some limitations. And the reason that Congress gave this sweeping immunity to these officers such that they could respond to the kind of catastrophe that occurred at the Washington Navy Yard. On September 16th, we have 117 police officers respond to the Washington Navy Yard, none of which were authorized to be there. None of which were authorized to have firearms there. This is a restricted access military base which has guards and gates keeping people from coming and going. Once the shooting started, eight different agencies and 117 people who didn't belong there went in there and defended the people who worked there and killed the guy who was doing the shooting. And that is what Congress envisioned when it said we're going to have people who aren't even working right now. We're going to make sure that they're allowed to carry a firearm concealed, loaded with police-type firearms. We're going to let them carry that just about anywhere they go in the United States because we want them to be able to respond to something like this. And what happens is 117 people get commendations. There's this huge fanfare about them. And even Commander Wilson is getting commended by the chief of police and the people that he works with. He's getting a lot of fanfare about this in the weeks following the September 16th shooting. And what happens is- Hey, you're going way into your rebuttal time. Do you want to keep it? No, let me. I'd like to reserve my time for rebuttal. Okay. Thanks. Good afternoon, your honors, and may it please the court. The MSPB correctly determined that it didn't have the authority to look into the merits of the security clearance revocation under USERRA because of the Supreme Court's decision in Egan. And thus, all the MSPB looked at was whether the procedures for the removal action were appropriately followed. It determined they did and sustained the agency's action. What if removal of security clearance is used for a discriminatory purpose, driven by a discriminatory animus? Is that non-reviewable? In an individual action, your honor, it is non-justiciable under Egan. However, the Supreme Court also has a case, Webster, in which there was a constitutional discrimination claim that dealt with, as a policy matter, was the government inappropriately discriminating against a certain class of people, and in that case, homosexuals. And there was a right of action there under Title VII. I believe it was Title VII. But that's not the case we have here. Commander Wilson is not arguing that there is a constitutional claim, but rather a claim under USERRA. And under Egan, the court has made very clear Congress must specifically state that it intends for a review of a security clearance action to be reviewed by courts, or else, because of the national security considerations that are typically reserved to the executive under Article II, those are non-justiciable. I mean, well, the Congress was pretty clear in USERRA that it wanted to give a broad range of protections to those serving in military service and for their return from military service, correct? Yes, your honor. However, it did not extend that specifically to reviews of security clearance determinations, and therefore, Egan applies. USERRA does have... A provision that it would have to be specifically stated, like a broad pronouncement under which this could fall is not enough, that the statute has to be specific and refer to security determinations? The specific word security determination wouldn't necessarily be required. But a general catch-all provision is not sufficient, as this court held in Hess. A broad sort of catch-all provision about, we will hear any complaint, is not sufficient. Similarly, the use of the word benefits, that something affecting the benefits of employment may be reviewed under USERRA. But a security clearance is not a benefit of employment, and thus, it's not a USERRA claim to discuss the security clearance determination. The USERRA claim that might be viable in this case is the revocation under section 4311 of USERRA, and that is not sufficient to get around Egan. That is exactly what happens in section, excuse me, in chapter 75, removal actions, that there is a removal action that's being appealed, but you cannot look at the, the board cannot look at the security clearance determination that was the predicate to the removal action. What about the DC Circuit's decision in Rattigan? Why isn't this like Rattigan? Respectfully, we disagree with the court's decision in Rattigan. We think Judge Kavanaugh's discussion about this is slicing and dicing the security clearance determination in an unworkable way. That's certainly the case here. And this court's decision in Kaplan v. Connors explaining that it's not simply the narrow box of security clearance determinations, but a broader sensitive positions, certainly undergirds that. In addition, Rattigan would be inapplicable anyway, even if it were binding on this court, because in Rattigan, the claim was for a Title VII claim for retaliation. And under that, under that claim, the referral itself could be a viable Title VII claim. Here, the mere referral for a security clearance determination isn't a USERRA claim. Even under Mr. Commander Wilson's arguments that the removal itself, I'm sorry, not the removal, the security clearance revocation itself is a USERRA action with which we disagree with that. But this is even a step further from that. This is just the referral. And the executive expects, and this is an Executive Order 12968 that's referred to in some of the D.C. Circuit opinions, expects and encourages people to refer to national security personnel to determine security clearance, to make a security clearance determination, even if that referral may be on its face somewhat dubious. That is the responsibility of the security division or security personnel who make the security clearance determination. And that's what happened here. It's not simply a referral, but there is also a determination given in the prospective judgment of the people entrusted to make these prospective decisions that this does not clearly consist Keeping a clearance would not be clearly consistent with national security. And that's the standard. And the Supreme Court in Egan recognized that the clearly consistent standard required for that prospective judgment was incompatible with review by the courts. And that's why this type of case is not justiciable. I have a little bit of a problem with your reemployment argument. You essentially argue, if you take it to a logical extreme, that if they're reemployed for any period of time before the security clearance is withdrawn, that somehow you can't fall under USERRA. Putting aside the security clearance question, I'm a little troubled by that because that could mean you could just bring somebody back for a short period of time and then hold off on your discriminatory action. Your Honor, it's not our position that there would be no claim under USERRA at all. It's that there would be no claim under Section 4312 of USERRA. So those are specifically dealing with reemployment rights. But 4311 also covers not only reemployment, but also employment in the first instance, revocation. And so if there's a revocation action, there can be a USERRA claim. But it's under 4311, not under 4312. OK. So as I discussed previously, the removal action could be a USERRA claim. But that falls squarely within the same analysis that the court did in Egan. That the removal action predicated on a loss of security clearance requires looking at just whether the agency looked at whether the position required a security clearance, whether it was required to give the employee a different job without a security clearance, whether the procedures were met. And the MSPB made those determinations in this case in the context of its Chapter 75 removal appeal. And therefore, there is nothing else that the MSPB could review for the removal action portion of a USERRA claim. The security clearance, the merits of the security clearance are not reviewable under Egan. What is your response to the friend on the other side when he says that his military duty required him to engage in the very actions that resulted in the withdrawal of security clearance? Well, as Your Honor noted, there is a factual dispute about the context of Mr. Commander Wilson's actions and whether he actually did act under military orders. But even putting that aside, that sort of analysis and, again, in the predictive judgment of the security personnel, whether his actions under military service were clearly consistent with the national security, that is not reviewable by this court and not reviewable by the MSPB. Because the discussion about whether he was carrying his personal weapon and that would generally, that's against the regulations and laws applicable, that was something for the security personnel to analyze, to review. And they did, and they made a determination, and that determination is final and not reviewable by the MSPB. If there are no further questions, we respectfully request this court affirm the MSPB's decision. OK. Thank you. Thank you, Your Honor. I think we're very much getting to the crux of this question, is what is this court going to do with Rattigan? Now, I've only cited one instance of Rattigan, but in the course of the D.C. Circuit's litigation, we've had three separate opinions on Rattigan. And in April, we had Cersei already denied in Rattigan, all of which have a consistent holding, which is the court may first look at the discriminatory intent in the referral and also as to false allegations in the referral. Now, there was an important part about Rattigan here, which is distinguished, is in Rattigan, they were reluctant to try to figure out if the agency relied upon the false statements to come to a conclusion as to their security clearance revocation. But that actually never happened in Rattigan, and that was kind of the part that got sidestepped. Instead, as was later noted by a district court case, that the court really could not reach what false statements might have been considered in this course of the security clearance revocation because that would then delve into the merits when they had the executive prerogative. What is distinguished here is that it goes in through the referral from the very beginning saying we are doing this because of Commander Wilson's military service. Every single document states this is because of what Commander Wilson did in his military service. But even if you are able to get yourself within Rattigan, and even if we decided that Rattigan was persuasive authority that we should adopt, even there, the D.C. Circuit narrowed the context of that precedent to only apply where you are talking about knowingly false referrals, right? Two things, and they are in the disjunctive. They are in the disjunctive, that is knowingly false referrals and referrals for a discriminatory purpose. I am quite comfortable with 689 Federal 3rd 771, for instance. That is the 2012 case. The problem with the discriminatory purpose, again, as I said the first go-around, it is really hard to delve into this McDonnell-Douglas kind of, was there a discriminatory purpose? And we can't, or what this court would use as the Sheehan factors under USERRA, most recently in Jones v. Health and Human Services, 834 Federal 3rd 361 this year by this court. You can't really try to figure out if there is a discriminatory motive without getting into the meat and potatoes of what their determination was. Here we have a factual distinction in everyone is saying it is because of his military service. I want to point to the court on JA 61. We have his military orders that say those dates, signed by his commanding officer. It says that these are his records showing that he was performing military service. Judge O'Malley brought up a good point about what about if he is required for military service? Is he required to be here? One of the things that the government says is nobody asked him to come. Nobody asked him to show up there. Nobody asked him to bring a gun onto this base. But that ignores the military concept of standing orders. That is to say when something bad happens, you should come here and we will figure out what to do. That is a very ordinary standing order that a military person upon some extraordinary event should rally and reach a rally point and await further orders. This is exactly what Commander Wilson does. He is even provided with special identification by the base police there that says I am here in case of an emergency and I am authorized to carry a firearm. That is what he did. Sarah prohibits the other agency from looking behind the motivation of the military, from looking at his performance in the military. They are not allowed to do that. You are not allowed to say you bombed children, so therefore we are not going to let you have your job back. That is exactly what Sarah prohibits. Okay, you are out of time. For these reasons and the reasons so stated in our briefs, we ask that Commander Wilson be reinstated to his position with the naval reactors and that the Merit Systems Protection Board decision be vacated. Thank you very much. Thank you. Cases will be submitted. All rise.